UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **AMY NICOLE SEAL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 3:23-cv-1295-LCB |
| | ) |
| **VGW LTD,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION & ORDER

Amy Nicole Seal sued VGW, Ltd., and three related business entities, VGW Holdings US, Inc., VGW US, Inc., and VGW Luckyland, Inc. ("VGW") in the Circuit Court of Franklin County, Alabama.  After VGW removed the case to this Court, Seal filed a motion to remand.  (Doc. 5).  Having considered all the filings as well as the argument of counsel at a hearing on the matter, the Court finds that the case is due to be remanded.

**I. Background**

This case and four others currently pending before this Court raise the same allegations against various defendants.[1]  Each case is nearly identical to a set of nine

---

[1] The other four cases are *Mills v. Playtika, Ltd. et al.*, 3:23-cv-1289-LCB; *Rice v. Aristocrat Leisure, et al*., 3:23-cv-1334-LCB; *Pilati v. Playstudios US LLC*, 3:23-cv-1335-LCB; and *Pilati v. Yellow Social Interactive Ltd*. 3:23-cv-1349-LCB.

cases filed in early 2023. Five of those cases were assigned to the undersigned, s*ee* *Gann v. Huuuge, Inc.,* No. 3:23-cv-00498-LCB, 2023 WL 5202376 (N.D. Ala. Aug. 14, 2023); *McGee v. SpinX Games, Ltd.,* No. 3:23-cv-00777-LCB, 2023 WL 5202377 (N.D. Ala. Aug. 14, 2023); *Mills v. Zynga, Inc.*, No. 3:23-cv-00463-LCB, 2023 WL 5198511 (N.D. Ala. Aug. 11, 2023); *Pilati v. Yellow Soc. Interactive, Ltd.*, 686 F. Supp. 3d 1248, 1249–50 (N.D. Ala. 2023); *Rice v. Aristocrat Leisure, Ltd.*, No. 3:23-cv-00480-LCB, 2023 WL 5198510 (N.D. Ala. Aug. 11, 2023), and four were assigned to Judge Lynwood C. Smith. *See Sornberger v. Sciplay Corp.*, 3:23-cv-00476-CLS (N.D. Ala.); *Seal v. VGW Ltd.*, 3:23-cv-00462-CLS (N.D. Ala.); *Pilati v. Playstudios US LLC*, 3:23-cv-00488-CLS (N.D. Ala.); and *Mills v. Playtika Ltd.*, 3:23-cv-00464-CLS (N.D. Ala.). The Court will refer to these collectively as the "Original Cases."

As they did in the Original Cases, the individual plaintiffs have sued various defendants, all providers of online casino-themed games[2], under Ala. Code § 8-1-150(b) (1975). That statute allows, among other things, "any person" to file a lawsuit to recover money lost on illegal gambling wagers "for the use of" the losing player's wife, children, or next of kin. Four plaintiffs, Gayla Mills, Amy Nicole Seal, Angel Deann Pilati, and Sera Stancil Rice have sued several defendants in two state courts

---

[2] While not relevant for purposes of the motions to remand, the parties dispute whether the games offered by the defendants qualify as illegal gambling under Alabama law.

under this statute to recover money allegedly lost by all Alabama residents who have played the defendants' games for the use of those players' wives, children, or next of kin. The defendants in each case removed the action to this Court asserting jurisdiction under various provisions of 28 U.S.C. § 1332. The plaintiffs have all filed motions to remand.

After the Original Cases were removed to this Court, the undersigned remanded each of the cases assigned to him while the plaintiffs in the cases assigned to Judge Smith voluntarily dismissed their complaints a few days later. The procedural events following the remands and voluntary dismissals noted above are a bit different for each case but fall into two categories relevant here. The plaintiffs in the voluntarily dismissed cases assigned to Judge Smith, i.e., *Seal v. VGW Ltd.*, 3:23-cv-00462-CLS (N.D. Ala.); *Pilati v. Playstudios US LLC*, 3:23-cv-00488-CLS (N.D. Ala.); *Mills v. Playtika Ltd.*, 3:23-cv-00464-CLS (N.D. Ala.), refiled new cases in state court in August of 2023. The plaintiffs in the remanded cases filed amended complaints.

Seal was one of the plaintiffs who voluntarily dismissed her original case and refiled a new case in state court. The only relevant difference is that in her new complaint, Seal specifically excluded from recovery any Alabamian who lost more than $75,000  Accordingly, the factual allegations and legal theories are essentially

3

the same. As discussed in one of the Original Cases[3], *Pilati v. Yellow Soc. Interactive, Ltd*:

> Gambling has long been illegal in the state of Alabama. "A person engages in gambling if he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome." Ala. Code § 13A-12-20(4) (1975). In 1852, the Alabama legislature codified a civil cause of action to recover money paid and lost in gambling endeavors. *Id*. § 8-1-150. The statute reads, in relevant part, as follows:
>
>> (a) All contracts founded in whole or in part on a gambling consideration are void. A person who has paid money or delivered anything of value lost upon any game or wager may recover such money thing, or its value by an action commenced within six months from the time of such payment or delivery.
>>
>> (b) Any person may also recover the amount of such money, thing, or its value by an action commenced within 12 months after the payment or delivery thereof for the use of the wife or, if no wife, the children or, if no children, the next of kin of the loser.
>
> *Id*. § 8-1-150(a)–(b).
>
> Yellow Social, a Gibraltar corporation with its principal place of business in Gibraltar, is in the computer game industry. Specifically, the company develops and markets games that can be played online or via cellphone applications. Several of Yellow Social's products are games of chance, such as those involving virtual slot machines and/or casino themes. In those games, a player initially receives free virtual coins to spend in order to play the game. For example, for Yellow Social's slot-machine games, a player uses coins to "spin" the reel. If the player loses the spin, the coins he wagered are lost. If the player

---

[3] The Memorandum Opinions issued in each of the Original Cases were substantially similar.

wins, he receives more coins. If the player runs out of coins entirely, then he can either stop playing the game or purchase additional coins. In other words, he can buy more playing time.

Many Alabama citizens play Yellow Social's games of chance and have purchased additional playing time. On March 8, 2023, Angel Pilati, an Alabama citizen, filed this action against Yellow Social in the Circuit Court of Franklin County, Alabama, pursuant to Alabama Code § 8-1-150(b), seeking to recover the money lost by Alabama citizens on Yellow Social's games of chance between March 2022 and March 2023. Shortly thereafter, Yellow Social removed the action to this Court, pursuant to 28 U.S.C. §§ 1441, 1446. Yellow Social relied on 28 U.S.C. § 1332 as the grounds for removal, claiming that this Court has subject matter jurisdiction under the statute's diversity of citizenship provision.

*Pilati v. Yellow Soc. Interactive, Ltd.*, 686 F. Supp. 3d 1248, 1250 (N.D. Ala. 2023) (internal citations omitted).

In the present case, VGW has again argued that this Court has traditional diversity jurisdiction under 28 U.S.C. § 1332.  However, it has also argued that this Court has jurisdiction over the case pursuant to the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. §§ 1332(d)(2) and 1453(b).  In support of that argument, VGW attached to its notice of removal a declaration from its General Counsel, Michael Thunder.  (Doc. 1-2.) Thunder declared that, after reviewing VGW's financial reporting system for the relevant period, the total amount that Alabama citizens had spent on VGW's games of chance far exceeded $5,000,000, even when excluding players who spent more than $75,000.

The Court notes that in responding to the motions to remand in each of the cases now pending, the defendants filed a consolidated response stating:

> Because of the strong similarities between this action and four other actions pending before the Court, the overlap between Plaintiffs' arguments in each case, and the shared bases on which this Court has jurisdiction over these matters, Defendants in all five actions are all filing the same opposition brief to promote efficient resolution of these issues.

(Doc. 10). The Court agrees that the cases all share nearly identical legal issues.[4]

## II. Legal Standard

Federal courts are courts of limited jurisdiction. Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Accordingly, "when an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). A removing defendant has the burden of establishing the propriety of removal under § 1441 and, therefore, must establish the existence of federal jurisdiction. *Leonard v. Enterprise Rent a Car*, 279 F.3d 967,

---

[4] A relevant difference is between the cases that were dismissed and refiled and the remanded cases in which the plaintiffs filed amended complaints. In the latter class of cases, the plaintiffs argue that remand is appropriate for an additional reason, i.e., that 28 U.S.C. § 1447(d) prohibits reconsideration of a prior remand order. That argument is not relevant in the present case because Seal dismissed her original case and refiled anew in state court.

972 (11th Cir. 2002). Because of federalism concerns implicated by removal jurisdiction, removal statutes must be construed narrowly, with all doubts to be resolved in favor of remand. *Am. Tobacco Co.*, 168 F.3d at 411; *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (noting Eleventh Circuit preference for remand where federal jurisdiction not "absolutely clear").

If the alleged basis for federal jurisdiction is diversity of citizenship under 28 U.S.C. § 1332, the removing defendant must prove: (1) that there is complete diversity of citizenship between the plaintiffs and the defendants; and (2) that the amount in controversy is greater than $75,000. 28 U.S.C. § 1332(a). If the amount in controversy is not apparent from the face of the complaint, the defendant must prove by a preponderance of the evidence that "the amount in controversy more likely than not exceeds ... the jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citation omitted).

Additionally, the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. §§ 1332(d)(2) and 1453(b), allows defendants to remove a class action with minimal diversity when at least 100 class members are present and "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs…."[5] CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules

---

[5] 28 U.S.C. §§ 1332(d)(1)-(5) provides several grounds for which a district court must decline jurisdiction of a class action brought under this section. None of those exceptions come into play for purposes of this order.

of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

### III. Defendants' Grounds for Removal

#### a. CAFA

The defendants first argue that Seal's case is properly removable under CAFA because they say, it meets all the requirements of a class action lawsuit as defined in the statute. As noted, 28 U.S.C. §§ 1332(d)(2) and 1453(b), allow a defendant to remove a class action with minimal diversity when at least 100 class members are present and the amount in controversy exceeds $5,000,000. Further, CAFA defines a class action to be a civil action filed under a state court's analogue of Fed. R. Civ. P. 23 or a state court's "rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

Seal did not file her lawsuit in state court under Alabama's version of Fed. R. Civ. P. 23. In fact, she specifically stated in the second sentence of her complaint that it "is not a class action pursuant to Rule 23 of the Alabama Rules of Civil Procedure." (Doc. 1-1 at 6). Additionally, Seal is the only named plaintiff and does not purport to be a member of any affected class. Rather, she filed her complaint under § 8-1-150(b) of the Alabama Code, which allows "any other person" to recover money lost through illegal gambling "for the use of the wife … children or

… next of kin of the loser." Seal does not claim that she lost money by illegally gambling. Rather, she claims to be the "other person" mentioned in the statute.

While noting Seal's assertions, the defendants nevertheless seek removal under CAFA because, they say, the action is "in substance a class action." (Doc. 1 at 10). Citing to the legislative history of CAFA, the defendants claim that Congress intended "the definition of 'class action' [] to be interpreted liberally," and that "[i]ts application should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority." S. Rep. No. 109-14, at 34–35 (2005). Congress has emphasized that "[g]enerally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." *Id.* The defendants claim that Seal's action resembles a class action because it is brought on behalf of the families of all players in Alabama who lost money on VGW's games.

In support of their argument that this case is removable because it is "in substance" a class action, the defendants note that there is no controlling law from the Eleventh Circuit or the Supreme Court as to how a district court should construe the phrase "class action" under CAFA. However, they cite to cases from the Seventh and Eighth Circuits for the proposition that CAFA confers subject-matter jurisdiction over any lawsuit that is "in substance a class action." Specifically, they cite *Addison Automatics, Inc. v. Hartford Cas. Ins.*, 731 F.3d 740, 742 (7th Cir.

9

2013) and *Williams v. Emp'rs Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017). However, those cases had vastly distinguishable procedural backgrounds and, to the extent they could be found persuasive, are readily distinguishable.

In *Addison*, the plaintiff "filed a complaint in state court seeking a declaratory judgment that defendant Hartford Casualty Insurance Company owed a duty to defend and indemnify a third party against whom Addison had earlier brought and settled a class action on terms that included an assignment to the class of the third party's rights against its insurers." 731 F.3d at 741. Like Seal did in this case, the plaintiff in *Addison* stated in its complaint that it intended to proceed in its individual capacity and not as a representative of the class it represented in the settled case. In finding removal proper, the Seventh Circuit held that the case was "in substance" a class action because "the terms of the class settlement approved in state court make clear that Addison has standing to pursue relief from Hartford only in its capacity as class representative." *Id.* at 742. The Court also held that the plaintiff owed a continuing fiduciary obligation to the class. That court summed up its analysis by noting that, "[b]y pursuing the rights assigned to it as class representative in the state court class action, Addison is necessarily continuing that class action."

The Eighth Circuit case, *Williams*, similarly had an underlying or related class action suit. In the case on appeal in *Williams*, the plaintiff filed a garnishment action in state court related to unpaid damages from an underlying class action. The

10

defendants removed based on CAFA. In arguing for remand, the plaintiff, as Seal did here, noted that the present complaint was not brought under the relevant state statute authorizing class actions but under another provision of state law providing for equitable garnishments. In rejecting the plaintiff's argument, the court held that "the equitable garnishment statute includes no provision authorizing a plaintiff to bring suit on behalf of others. Rather, it is clear from the pleadings that Williams can bring this case only because of her status as the representative of the class certified under Rule 52.08, an undisputed analogue of Rule 23." *Id.* at 900. In the present case, there is no underlying class action comparable to the cases in *Addison* and *Williams*, and, for reasons explained below, it cannot be said that § 8-1-150(b) is similar to or an analogue of Fed. R. Civ. P. 23.

    Rule 23(a) contains four prerequisites that must be satisfied before a member of a class may sue as a representative party. Those prerequisites are commonly called numerosity, commonality, typicality, and adequacy of representation. Each must be met before a district court can certify a class. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1250 (11th Cir. 2009) ("For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a)."). Section 8-1-150(b) contains none of those requirements. Most relevant here is the typicality requirement.

The Eleventh Circuit has held:

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir.2008) (quotations and internal citations omitted; alteration in original). Although typicality and commonality may be related, we have distinguished the two concepts by noting that, "[t]raditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir.2001) (citing *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir.2000)).

*Vega*, 564 F.3d at 1275. Here, Seal does not allege that she lost money playing the defendants' games. In fact, Seal alleges nothing about herself other than to assert that she is an adult resident of Franklin County, Alabama. She claims only to be the "other person" referenced in § 8-1-150(b). Because § 8-1-150(b) does not require typicality, a mandatory prerequisite under Rule 23, it is not analogous to Rule 23. Similarly, because there is only one named plaintiff in this case and that plaintiff is not a representative member of the alleged class, the requirements of numerosity and commonality are not fulfilled.

As noted above, CAFA defines a class action as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. 1332(d)(1)(B). Seal's case was not brought

12

under Rule 23, and, for the reasons stated above, it was not brought under a similar state statute. Accordingly, her case does not meet the definition of a class action under CAFA.

In Seal's memorandum in support of her motion to remand, she cites several cases where courts have declined to find CAFA jurisdiction in cases brought under state statutes "authorizing the government or a private entity to bring a statutory claim on behalf of those harmed by the defendant's conduct." (Doc. 8 at 3). In their response to that motion, the defendants devote several pages of argument to distinguishing those cases from the present one. Their argument is that the cases Seal cites involved private attorney general actions or *parens patriae* actions where the present case does not. This difference, the defendants say, makes the plaintiff's case more akin to a class action. But, as the Court held above, the present case does not meet the definition of a class action as described in § 1332(d). Whether the case is a private attorney general action or *parens patriae* action is immaterial.

### b. Diversity Jurisdiction

The defendants also argue that removal is proper because the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). They point out that they are citizens of a different state than Seal and contend that the amount in controversy exceeds $75,000. While Seal does not dispute the parties' geographical diversity, she does dispute the amount in controversy. The central argument between the

13

parties as to the amount in controversy is whether the amounts lost by each player in Alabama can be aggregated to reach the $75,000 threshold.[6] In arguing that the amount in controversy is satisfied, the defendants candidly note that the undersigned rejected this argument in a related case last year, *Rice v. Aristocrat Leisure, Ltd.*, 2023 WL 5198510 (N.D. Ala. 2023). While the defendants note their respectful disagreement with that ruling, they do not explicitly argue that the Court should reconsider it here. Nevertheless, the Court sees no reason to depart from its analysis of this issue in *Rice* and similarly finds that the amount in controversy is not met in this case.

The defendants do purport to advance a new argument and urge the Court to rely on its "judicial experience and common sense" when evaluating the amount in controversy. *See Merriweather v. Digsby*, 2021 WL 2935936, at *2 (N.D. Ala. July 13, 2021) ("A court 'need not suspend reality or shelve common sense' when evaluating the amount in controversy." (quoting *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010))); *Roe*, 613 F.3d at 1062 ("[C]ourts may use their judicial experience and common sense in determining whether the case . . . meets federal jurisdictional requirements."). They point out that by excluding from her complaint any player who lost more than $75,000, Seal is excluding from potential relief that portion of the public who was the most injured. According to the

---

[6] In her complaint, Seal specifically excludes any player who lost more than $75,000.

14

defendants, this is contrary to Seal's assertion that she seeks to enforce a public interest. They also opine about how Seal's attorneys are to be compensated and argue that, since Seal is the only client, then any attorneys' fees can come only from her. Therefore, the reasoning goes, any amount that is paid to counsel is necessarily part of Seal's award and counts toward the amount in controversy. Since Seal is seeking recovery of money lost by all players in Alabama, an amount that is indisputably greater than $75,000, the amount in controversy would be satisfied.

Additionally, the defendants go through various hypothetical scenarios for how this case may eventually play out. For example, the defense asserts that there is a possibility that there will be unclaimed funds because, in many instances, it may be impossible to identify the losing player's wife, children, or next of kin. As a result, they argue, "a significant portion of the damages at issue in this case *may* not be returnable to statutorily eligible family members." (Doc. 10 at 23) (emphasis added). The defense also opines that "*if* the case proceeds to the point where a claims or redemption process is required, a *potentially* large portion of the population will likely not submit a claim to monies to which they might be entitled." *Id.* (emphasis added). The defendants' answer to these hypothetical questions is that Seal and her attorneys would keep this unclaimed money and that the amount of unclaimed money would likely be more than $75,000. They also point out that § 8-1-150(b) is silent on these issues.

While these hypotheticals certainly raise valid questions about how cases brought under § 8-1-150(b) unfold, they do not overcome the well-settled principle that "removal statutes must be construed narrowly, with all doubts to be resolved in favor of remand." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).; *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (noting Eleventh Circuit preference for remand where federal jurisdiction not "absolutely clear"). As evidenced by the defendants' use of the speculative language emphasized above, jurisdiction here is not "absolutely clear." Given the dearth of caselaw interpreting cases brought under § 8-1-150(b), this Court can only speculate about how an Alabama court would resolve the hypotheticals discussed above. Accordingly, the case is due to be remanded.

### IV.  Conclusion

For the foregoing reasons, the Court finds that it does not have subject-matter jurisdiction over this case under CAFA or § 1332(a). Accordingly, Seal's motion to remand (Doc. 5) is **GRANTED**, and this case is hereby remanded to the Circuit Court of Franklin County, Alabama.

**DONE** and **ORDERED** January 7, 2025.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE